UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROVIDENCIA V. and RICARDO V.,
individually and on behalf of their infant child,
K.V.,

              Plaintiffs,

-v-

No. 02 Civ. 9616 (LTS) (HBP)

LUCILLE SCHUTLZE, individually and as caseworker;
FRANKIE CINTRON, individually and as supervisor;
"JANE" DENIZE, individually and as supervisor;
BARBARA DITMAN, individually and as manager;
NICHOLAS SCOPPETTA, individually and as Commissioner;
WILLIAM BELL, individually and as Commissioner;
and CITY OF NEW YORK,

              Defendants.

## OPINION AND ORDER ADDRESSING MOTIONS FOR SUMMARY JUDGMENT, MOTION TO BIFURCATE TRIAL, AND MOTIONS IN LIMINE

APPEARANCES:

LANSNER & KUBITSCHEK
  By: Christopher Weddle, Esq.
325 Broadway
New York, NY 10007

*Attorney for Plaintiffs*

CORPORATION COUNSEL OF THE CITY
OF NEW YORK
  By: Abigail L. Goldenberg, Esq.
100 Church Street
New York, NY 10007

*Attorney for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs bring this action under 42 U.S.C. section 1983 and New York state law, alleging that their constitutional rights were violated when the New York City Administration for Children's Services ("ACS") removed their child, K.V., from their custody for eight days and filed abuse and neglect charges against them in the New York State Family Court.

Plaintiffs move for summary judgment on their first (Fourteenth Amendment-due process), third (Fourteenth Amendment-unlawful interference with custody), fourth (Fourth Amendment-unreasonable seizure), sixth (Fourth Amendment-malicious prosecution ), and seventh (state law malicious prosecution) causes of action.[1]  Defendants cross-move for summary judgment dismissing all of the federal claims against the named individuals in their official capacities and against the City of New York (the official capacity Defendants and the City will be referred to as the "Municipal Defendants").[2]  Defendants also move, pursuant to Federal Rule of Civil Procedure 42(b), for an order severing the trial of the claims asserted against the individual Defendants from that of the claims asserted against the Municipal Defendants.  Finally, Defendants move in limine to preclude the introduction at trial of certain of Plaintiffs' proposed exhibits.

The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 of Plaintiffs' state

---

[1]  Plaintiffs' "Statement of the Case," in their initial moving papers, does not reference the seventh cause of action. However, it is clear from their discussion of the malicious prosecution claims that Plaintiffs seek summary judgment on both the federal and state law claims of malicious prosecution. (Mem. in Supp. of Plfs' Mot. for Summ. J., at 15.)

[2]  The Court assumes that each named person is being sued in his/her official capacity as well as individual capacity.

law claims.  For the following reasons, Defendants' and Plaintiffs' motions for summary

judgment are denied; Defendants' motion to bifurcate the trial proceedings is denied; and

Defendants' motions in limine are denied in part, granted in part, and continued under

advisement in part.

## BACKGROUND

The following facts are undisputed except to the extent specifically indicated

otherwise.  Plaintiffs Providencia V. and Ricardo V. ("Plaintiffs") are the parents of K.V., who

was born on December 24, 1988.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶¶ 7, 8.)

During the relevant period, Plaintiffs resided together with their infant son and an older child,

Rick, who was born on December 15, 1984.  (Id. at ¶¶ 9, 11.)  Rick was often violent with his

father, who had called the police concerning Rick on more than a dozen occasions.  (Id. at ¶ 13.)

On August 26, 2001, Mr. V. witnessed Rick performing oral sex on K.V. in the living room.  (Id.

at ¶ 16.)  On August 28, 2001, Plaintiffs made an appointment on the following day for K.V. to

be seen by Bellevue's Child Advocacy Center ("CAC").  (Defs' Rule 56.1 Stmt. and Pltfs' Resp.

at ¶¶ 25-28.)  On August 29, 2001, Plaintiffs cancelled the appointment because K.V. was

scheduled to go on a camping trip.  (Id. at ¶ 29.)

On the same day and because of the cancellation, a social worker at the hospital

filed a report with the New York State Central Registry of Child Abuse and Maltreatment

("SCR"), describing the sexual assault and noting that the child was not brought in for a medical

examination.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶ 22; Christopher Weddle Decl.

in Supp. of Pltf's Mot. for Summ. J., "Weddle Decl.," Exh. 14.)  On August 29, 2001, this SCR

report was transmitted to ACS for investigation and Defendant Lucille Schultze ("Schultze") was

assigned to investigate the report.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶¶ 23, 24.)

Defendants Frankie Citron ("Citron") and "Jane" Denize ("Denize") directly supervised Schultze,

and, until September 5, 2001, Defendant Barbara Ditman ("Ditman") was the overall manager of

the investigation. (Id. at ¶¶ 25, 30.)  Defendant Nicholas Scoppetta ("Scoppetta") was

Commissioner of ACS until December 27, 2001, and was replaced by Defendant William Bell

("Bell").  (Compl. ¶¶ 6, 7.)

          After talking to the Bellevue hospital social worker on August 29, 2001, Schultze

visited the Plaintiffs' home that evening and interviewed all the family members, including K.V.

and Rick.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp.  ¶¶  31, 32.)  Schultze's notes from

K.V.'s interview indicate that he was sexually abused by Rick for over a year and that Rick had

previously sexually abused their cousins.  (See Abigail Goldenberg Decl. in Supp. of Defs' Mot.

for Summ. J., "Goldenberg Decl.," Exh. F, at 40.)  The parties dispute whether the Plaintiff

parents knew that Rick was molesting K.V. and his cousins prior to the incident on August 26,

2001. (Defs' Rule 56.1 Stmt. and Pltfs' Resp. ¶¶ 38, 39.)  That night, Mrs. V indicated that she

was taking Rick out of the apartment and began packing his things.  (See Goldenberg Decl., Exh.

L, at 44.)  However, according to Plaintiffs, Rick did not leave the house that night.  (Id., Exh. C,

at 133, 134 and Exh. I, at 117, 118.)  The parties disagree as to whether the entire family agreed

to meet Schultze the next morning to go to CAC at Bellevue hospital.  (Defs' Rule 56.1 Stmt.

and Pltfs' Resp. ¶ 40.)

          On the morning of August 30, 2001, Schultze arrived at Plaintiffs' home, where

she found Mr. V. and K.V.  Mrs. V had gone to work that day and Mr. V did not know Rick's whereabouts.  (Id. at ¶¶ 43, 45.)  According to Schultze, Mr. V. said he had prior knowledge of Rick abusing his two cousins.  (Goldenberg Decl., Exh. F at 49.)  At Bellevue hospital, K.V. was interviewed by a detective from the Special Victims Services of the New York Police Department in the presence of a doctor from Bellevue; K.V. detailed the sexual abuse committed by Rick.  Schultze observed the interview through a two-way mirror.  (Defs' Rule 56.1 Stmt. and Pltfs' Resp. ¶ 49.)  After the interview, at approximately 12:00 p.m., Schultze  consulted with her supervisors (Citron, Denize, and Ditman) and, at their direction, removed K.V. from his father's custody and placed him in the custody of ACS.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶¶ 40, 44.)  Schultze believed that K.V.'s safety was at risk because Rick was "out of control," his parents were unable to control him, and his whereabouts, at the time, were unknown.  (See Goldenberg Decl., Exh, M at 96.)  Later that day,  Mr. V. took Rick to his lawyer, who escorted Rick to the police department.  He was arrested and charged with sodomy, attempted sodomy, and endangering the welfare of a child; he was released on his own recognizance.  (Defs' Rule 56.1 Stmt. and Pltfs' Resp. Rule ¶¶ 54, 55.)

On August 31, 2001, Defendants filed a petition, pursuant to Article 10 of the Family Court Act, in the Family Court for the County of New York, alleging that Plaintiffs had abused and neglected K.V.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶ 79.)  This petition asserted that K.V.'s removal was an emergency pursuant to § 1024 of the Family Court Act.  (See Goldenberg Decl., Exh. N.)  On the same day, Judge Sosa-Lintner issued an order remanding K.V. into ACS custody and scheduled a hearing pursuant to § 1028 of the Family Court Act for September 5, 2001.  (See id., Exh. Q.)

At the hearing on September 5, 2001, Judge Jody Adams found that Defendants had not proven that the return of K.V. to his parents' custody would pose an imminent risk to his life and health and ordered Defendants to return K.V.  (See id., Exh. L at 70.)  The court also found that Rick should stay with his maternal relative to keep him separated from K.V.  (Id. at 75.)  On the afternoon of September 6, 2001, K.V. was returned to his parents.  (See id., Exh. F.)  On March 18, 2002, ACS withdrew its abuse and neglect Petition against Plaintiffs.  (Pltfs' Amended Rule 56.1 Stmt. and Defs' Resp. ¶ 86.)

DISCUSSION

### I. Summary Judgment Motions

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original)).

"[M]ere conclusory allegations, speculation or conjecture," will not provide a sufficient basis for

a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d

Cir. 1996).

When cross-motions for summary judgment are filed, "the standard is the same as

that for individual motions for summary judgment." Natural Res. Def. Council v. Evans, 254 F.

Supp. 2d 434, 438 (S.D.N.Y. 2003). "The court must consider each motion independently of the

other and, when evaluating each, the court must consider the facts in the light most favorable to

the non-moving party." Id. (citing Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir.

2001)).


*Collateral Estoppel*

Plaintiffs argue that Defendants are barred by collateral estoppel, on the basis of

the September 5, 2001, New York Family Court decision, from asserting that there was probable

cause to remove K.V. from his parents' custody or that the initial removal was otherwise

reasonable.  According to Plaintiffs, the Family Court determined in that proceeding that there

was no danger in the home that warranted K.V.'s original removal from the home.  Plaintiffs

argue that this determination, and the judge's comment that the removal had been "shocking,"

preclude any argument for probable cause or reasonable removal.  (Mem. in Supp. of Pltfs' Mot.

for Summ. J. at 11-12.)  Consequently, Plaintiffs contend, they should be granted summary

judgment on their constitutional claims relating to K.V.'s removal.

"Under collateral estoppel, once a court has decided an issue of fact or law

necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). The collateral estoppel doctrine is generally applicable to cases brought under 28 U.S.C. section 1983. Id. at 417. As part of this doctrine, Federal courts are required to give preclusive effect to state-court judgments. See 28 U.S.C. § 1738; Cameron v. Fogarty, 806 F.2d 380, 384 (2d Cir. 1986). In determining whether an issue is barred in the federal action, courts must apply the collateral estoppel rules of the state in which the prior decision was rendered. Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). In this case, the prior judgment was rendered by New York State Family Court, so New York law applies. Under New York law, the doctrine of collateral estoppel applies "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the [the party against whom the doctrine is asserted] had a full and fair opportunity to litigate the issue in the earlier action." Id.

The purpose of the Family Court hearing was not to determine the legality of the seizure six days prior to the proceeding. Rather, pursuant to section 1028 of the Family Court Act, the purpose of the hearing was solely to determine whether the child, who had already been removed, should be returned to his parents. See Family Court Act § 1028 (McKinney Supp. 2007). In making this determination, courts consider the best interests of the child and decide whether continued removal is necessary to avoid imminent risk to the child's life or health. Id. At the hearing on September 5, 2001, Judge Adams concluded that the state "failed to prove that a return of the child, K.V., would pose an imminent risk to his life and health" and granted the parents' application to return K.V. to their custody. (Goldenberg Decl., Exh. L at 70.) The constitutional issues of probable cause and reasonableness with respect to the initial removal

were not addressed or resolved by the Family Court's September 5th determination that K.V. should be returned to his parents, nor was there any issue of personal liability implicated in that proceeding.  See Velez v. Reynolds, 325 F. Supp. 2d 293, 305-306 (S.D.N.Y. 2004); Shapiro v. Kronfeld, No. 00-6286, 2004 WL 2698889 at *11-12 (S.D.N.Y. Nov. 24, 2004) (whether ACS violated any constitutional rights in emergency removal of child was not necessarily decided for collateral estoppel purposes by subsequent Family Court preliminary proceeding concerning continued removal of child).

"Issues are considered identical [for collateral estoppel purposes] if a different decision in the second suit would necessarily destroy or impair rights or interests established by the first."  In re American Tobacco Co., 880 F.2d 1520, 1527 (2d Cir. 1989) (internal quotations omitted).  Here, a decision that Defendants did not violate Plaintiffs' constitutional rights in connection with the initial removal would not call into question Judge Adams' determination that the family was entitled to K.V.'s return at the time of Section 1028 hearing.  Accordingly, Plaintiffs' motion for partial summary judgment is denied to the extent it is premised on collateral estoppel.


*Rooker-Feldman* Doctrine

Plaintiffs' summary judgment motion must, for substantially the same reasons, be denied to the extent it relies on the Rooker-Feldman doctrine for the proposition that Defendants are precluded from raising defenses inconsistent with Judge Adams' remarks during the Family court hearing concerning the parties' conduct or her decision that K.V. faced no imminent danger if returned to his parents.  The Supreme Court recently examined the Rooker-Feldman doctrine

as it has been applied in lower courts. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544
U.S. 280 (2005). The doctrine holds that federal district courts lack subject matter jurisdiction of
cases that seek review of judgments of state courts. See id. at 283; Hoblock v. Albany County
Board of Elections, 422 F.3d 77 (2d Cir. 2005). In Exxon Mobil, the Supreme Court pared down
this doctrine to its core, holding that it is "confined to . . . cases brought by state-court losers
complaining of injuries caused by state-court judgments rendered before the district court review
and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. These requirements
contemplate an aggrieved plaintiff bringing an action in federal court seeking to reverse a state
court judgment. See Hoblock, 2005 WL 2108689 at *1.

 Plaintiffs' invocation of the doctrine as a means of precluding the assertion of
defenses is, accordingly, anomalous. In any event, a decision in Defendants' favor would not
mean a rejection of the state judgment. As explained above, the issue addressed by the Family
Court was whether K.V. should be returned on September 5, 2001, rather than whether the
seizure six days earlier had been proper.

*Malicious Prosecution Claims*

 Plaintiffs seek summary judgment on the malicious prosecution claims that they
have asserted against Defendants pursuant to 42 U.S.C. section 1983 and New York state law.
The elements of malicious prosecution under section 1983 and New York state law are the same.
Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991). A plaintiff "must establish that: (1) the
defendant either commenced or continued a criminal proceeding against him; (2) that the
proceeding terminated in his favor; (3) that there was no probable cause for the criminal

proceeding; and (4) that the criminal proceeding was instituted with actual malice." Id. The

presence of probable cause bars a claim of malicious prosecution. Richards v. City of New York,

No. 97-79900, 2003 U.S. Dist. LEXIS 8037, *31 (S.D.N.Y. May 7, 2003).[3]

   Plaintiffs' application for summary judgment as to their malicious prosecution

claims fails because there are genuine issues of material fact as to, inter alia, whether Defendants

had probable cause to file the Petition in the first instance, and whether any probable cause that

did exist dissipated following the Family Court's September 5, 2001, hearing. It cannot be said

that a reasonable fact finder construing the evidentiary record in the light most favorable to

Defendants could not find for Defendants on these issues.


*Municipal Liability*

   Plaintiffs also seek summary judgment holding liable the City of New York for

---

[3]  Generally, malicious prosecution claims are limited to criminal actions.
Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004). Plaintiffs'
claim centers on a civil action, namely the abuse and neglect Petition filed against
them under Article 10 of the Family Court Act. See People of the State of New
York v. Smith, 62 N.Y. 2d 306, 309 (N.Y. 1984) ("A child abuse or neglect
proceeding under Article 10 of the Family Court Act is a civil proceeding."). In
order to sustain a section 1983 malicious prosecution claim in a civil proceeding,
there must be "a seizure or other perversion of proper legal procedures implicating
the claimant's personal liberty and privacy interests under the Fourth
Amendment." Washington, 373 F. 3d at 316 (internal quotations omitted). New
York law similarly requires "a showing of some interference with plaintiff's
person or property." Chi Chao Yuan v. Rivera, 48 F. Supp. 2d 335, 349 (S.D.N.Y.
1999) (internal citations omitted). Here, the removal of Plaintiffs' son is sufficient
to meet the threshold for applicability of this doctrine. See Tenebaum v.
Williams, 193 F.3d 581, 602-605 (2d Cir. 1999) (finding that seizure of child
may constitute cognizable Fourth Amendment claim under section 1983.); Chi
Chao Yuan, 48 F. Supp. 2d at 348-349 (finding that depriving parent of custody of
child may constitute constitutional injury sufficient to bring malicious prosecution
under section 1983 and New York State law).

the constitutional violations allegedly committed by the other defendants. Defendants cross-move for summary judgment, seeking to dismiss all of Plaintiffs' municipal liability claims.

In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) the Supreme Court held that local governments are not wholly immune from suit under section 1983. Monell, 436 U.S. at 663. Municipalities are subject to suit under section 1983 for monetary, declaratory, or injunctive relief if it is shown that the allegedly unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers of the defendant body. See, e.g., id. at 690; Tenenbaum v. Williams, 193 F.3d 581, 597 (2d Cir. 1999); Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). The inference that such a policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." Gottlieb, 84 F.3d at 518 (citation omitted). The Supreme Court also held that municipalities may be held liable for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91.

In order to state a claim for municipal liability under section 1983, Plaintiffs must establish three elements: (1) that an official policy or custom is in place; (2) that there is a causal link between Plaintiffs' alleged constitutional injury and the policy or custom; and (3) that Plaintiffs in fact suffered a constitutional injury. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted).

Plaintiffs contend that ACS policy was the motivating force behind the alleged

constitutional injuries.  They specifically cite the ACS Mission Statement that was in place at the

time of the removal, and a November 1999 memorandum, to establish that certain policies as

evidence that the agency's official policy was to remove children as a first, rather than last,

resort.  (See Weddle Decl. Exh. at 17, 23.)  Plaintiffs also rely on Defendants' deposition

transcripts, in which witnesses responded affirmatively when queried as to whether all of their

actions had been taken in accordance with ACS policy.  (See id., Exh. 7 at 53-57, Exh. 3 at 159,

Exh. 4 at 160, Exh. 6 at 49, Exh. 5 at 103, 104.)  Defendants argue that they are entitled to

summary judgment because Plaintiffs' proffered evidence is insufficient to support a finding of

relevant municipal policies or customs.

Both motions for summary judgment on this issue are denied.  As explained

above, there remain genuine issues of material fact as to whether Plaintiffs suffered violations of

their federal constitutional rights; it is thus too early to address Plaintiff's request for relief

against the City with respect to such alleged violations.  Furthermore, the evidence tendered by

Plaintiffs on the municipal liability issue could, when construed in the light most favorable to

Plaintiffs, support a reasonable fact finder's determination that the actions taken by the municipal

employees with respect to the removal and the abuse and neglect proceedings was done pursuant

to municipal custom or policy.  Defendants' motion for summary judgment on the issue of

Monell liability must also, therefore, be denied.


II.  Motion to Bifurcate

By letter application dated May 12, 2004, Defendants move for an order

establishing separate trials for the individual Defendants and the Municipal Defendants.

Under Federal Rule of Civil Procedure 42(b), the Court, in its discretion, can bifurcate the trial of an action for "convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed. R. Civ. P. 42(b). The decision to bifurcate a trial rests within the sound discretion of the trial court. See Simpson v. Pittsburgh Corning Corp., 901 F.2d 277, 283 (2d Cir. 1990); Agron v. Trustees of Columbia Univ., No. 88 Civ. 6294, 1997 WL 399667 at *1 (S.D.N.Y. July 15, 1997). Although bifurcation of trials is not unusual and may under appropriate circumstances be the preferred method, bifurcation remains the exception rather than the rule. See Lewis v. Triborough Bridge, No. 97 Civ. 0607, 2000 WL 423517 at *2 (S.D.N.Y. Apr. 19, 2000); Agron, 1997 WL 399667 at *1; Kerman v. City of New York, No. 96 Civ. 7865, 1997 WL 666261 at *5 (S.D.N.Y. Oct. 24, 1997).

The application of Rule 42(b) does not lend itself to a bright-line test but, rather, requires case-by-case analysis. See Monaghan v. SZS 33 Associates, 827 F. Supp. 233, 245 (S.D.N.Y. 1993). Factors that courts consider in determining whether bifurcation is appropriate include: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. See Lewis, 2000 WL 423517 at *2; Reading Indus., Inc. v. Kennecott Copper Corp., 61 F.R.D. 662, 664 (S.D.N.Y. 1974). In municipal liability suits, courts have separated the individual and municipal claims in an effort to avoid unnecessary discovery. See generally Morales v. Irizarry, No. 95-5068, 1996 U.S. Dist. LEXIS 15619 at *1 (S.D.N.Y. Oct. 17, 1996) (collecting cases). The party seeking bifurcation bears the burden of establishing that bifurcation is warranted. See

Lewis, 2000 WL 423517 at *2.

Defendants argue that the Court should separate the trial into two phases: one dealing with the injury claims relative to the individual Defendants and one dealing with municipal liability, contending that such bifurcation will serve the interests of judicial economy. However, discovery here is complete and the evidentiary issues relating to municipal liability are not complicated. There is thus no strong justification for bifurcation from the judicial economy perspective.

Defendants also argue that bifurcation would avoid prejudice to the individual Defendants, positing that Plaintiffs may introduce evidence of other removals and related ACS actions that might confuse the jury into thinking that all removals are unlawful. Introduction of testimony and evidence relating to the allegedly improper training and supervision of ACS employees may also, according to Defendants, confuse the jury into thinking that such evidence is sufficient to hold the individual Defendants liable. Plaintiffs suggest in their opposition to the bifurcation application that they do not intend to seek to introduce such evidence. To the extent such evidence is proffered, Defendants may make appropriate objections or applications for limiting instructions.

The motion to bifurcate the trial proceedings is denied.


III. Motions in Limine

Defendants' May 12, 2004, letter also includes a number of motions in limine.

*Family Court Transcript*

Defendants seek to exclude Plaintiffs' exhibit 17, a partial transcript of the

September 5, 2001, Family Court proceeding.  Defendants argue that the transcript is not

relevant, that it is more prejudicial than probative, and that it constitutes inadmissible hearsay.

The partial transcript includes Judge Adams' findings and her explanation of her decision to

release K.V. to Plaintiffs' custody. (See Pltfs' Trial Exh. 17.)  Plaintiffs argue that the transcript

is relevant to their due process and malicious prosecution claims, the former because it

purportedly demonstrates that ACS representatives lied to obtain the August 31, 2001, court

order continuing K.V. in ACS custody and contains an admission by Defendants (through

counsel) that the family's circumstances had not changed between the time of the removal and

the time of the hearing, and the latter because the abuse and neglect proceeding was continued

for several months following the September 5, 2001, hearing notwithstanding Judge Adams'

remarks and findings.

       Because Judge Adams' remarks and determinations concerning the initial removal

and the August 31, 2001, court decision are post-hoc, based on a record not necessarily

coextensive with Defendants' or the prior judge's knowledge at the relevant times, and appear to

address ultimate facts on which the jury must make findings in this action, any probative value of

the transcript on the due process claim is significantly outweighed by the danger of unfair

prejudice and jury confusion, in that the judge's statements can in no way have influenced the

parties' conduct in relation to the initial removal.  To the extent Plaintiffs argue that counsel's

remark that "[n]othing has changed"[4] constituted an "admi[ssion]" on the part of "defendants . . .

that the circumstances concerning the V. family had not changed in any way between the date

---

[4]      (Goldenberg Decl., Ex. L at 67-68.)

[K.V.] was removed and the day of the hearing,"[5] the remark of counsel is sufficiently ambiguous as to context that the danger of confusion of the jury and unfair prejudice to Defendants associated with use of the statement as a platform for admission of the Family Court proceedings in connection with the jury's consideration of Plaintiffs' claims concerning the initial removal far outweighs any probative value of the remark in that regard.

The transcript is also, however, relevant to Plaintiffs' claim that the continuation of abuse and neglect proceedings after September 5, 2001, lacked probable cause. Defendants knowledge of Judge Adams' findings concerning the actions of the parties and her determination that K.V.'s return presented no threat to his well-being are relevant to the question of whether Defendants had probable cause to continue the abuse and neglect proceeding after the removal hearing and, potentially, to any qualified immunity issue that might be raised as to the individual Defendants' actions in that regard. Except as to the passages specified below, the Court finds that the probative value of the decisional portion of this court record is not substantially outweighed by Rule 403 considerations.

Accordingly, the Court denies Defendants' motion to exclude the exhibit in its entirety but will permit a redacted version of the portion consisting of the judge's findings and remarks to be introduced, subject to appropriate limiting instructions. The following portions of the exhibit shall be redacted as unfairly prejudicial and likely to cause the jury confusion: page 70, lines 18 (beginning with the words "In fact, when the counsel for . . .") through page 71, line 2; page 72, lines 10-14 and 22-25; page 73, lines 1-3 (through the words "for five or six days"). Any arguments concerning the admissibility of the portions of the transcript following the judge's

---

[5]     (Pltf's Surreply Brief at 6.)

PROVIDENCIA.WPD     VERSION 5/31/07                                                                    17

ruling can be addressed in connection with the final pretrial conference.

*Rick's Medical Records*

Defendants seek to exclude Plaintiffs' exhibit 5, which consists of medical records relating to Rick and dating from the 1998-1999 time frame, on the grounds that the records are not relevant, more prejudicial than probative, and inadmissible hearsay. Defendants argue that, because Rick is not a party to this action, his records are not relevant to any material issue. Plaintiffs argue that the records are relevant to show that they took appropriate steps to address Rick's behavior. The Court reserves decision on this motion in limine pending Plaintiffs' offer of proof at trial.

*Report, Resume, and Case List of Medical Experts*

Defendants seek to exclude Plaintiffs' exhibit 28, the case list of Defendants' expert, Dr. Schnieder, and exhibit 30, the report and resume of Plaintiffs' expert Dr. Komada. The Court does not need to address the admissibility of the case list, as Plaintiffs proffer that they will limit their use of the exhibit to impeachment.

Defendants argue that Dr. Komada's resume and report are not relevant to any material issue, are cumulative evidence, and are inadmissible hearsay. Plaintiffs will not be permitted to introduce Dr. Komada's report in their principal case, as it is hearsay and Plaintiffs have not demonstrated that the underlying factual information is admissible under Fed. R. Evid. 703 or, if admissible, so voluminous as to warrant presentation in the form of a chart or summary

under Fed. R. Evid. 1006.  However, the Court denies Defendants' motion to preclude the proffer

of Dr. Komada's resume, without prejudice to renewal at trial.


*Family Court Judges' Notes*

Defendants seek to exclude exhibit 18, which consists of notes purportedly taken

by Family Court judges on the various hearings relevant to this case.  Defendants argue that the

notes are not relevant, more prejudicial than probative, and inadmissible hearsay.  Plaintiffs argue

that the notes are relevant to the assessment of damages surrounding their alleged constitutional

injuries and are admissible under a hearsay exception.  The notes are relevant in that they may

bear on the timing, duration and nature of the abuse and neglect proceedings; they also appear to

be admissible as records of regular conducted activity and/or public records under Fed. R. Evid.

803(6) and (8).  However, the Court will consider, with regard to the factual statements regarding

K.V. in the notes, any request for appropriate redactions or limiting instructions.


*ACS Statistics Letter*

Defendants seek to exclude Plaintiffs' Exhibit 31, a letter setting forth certain

child placement statistics and addressing the types of statistics that ACS can generate.  Plaintiffs

argue that it is relevant to their negligent training claim.  The Court reserves decision on this

motion pending Plaintiffs' offer of proof on this issue at trial.


*Objections to Other Exhibits*

Defendants' May 12, 2004, letter includes a table listing in generic fashion potential objections to a number of other exhibits that Plaintiffs have designated. Further consideration of these objections is reserved to the time of trial.

## CONCLUSION

For the foregoing reasons, Defendants' and Plaintiffs' motions for summary judgment are denied; Defendants' motion to bifurcate is denied; Defendants' motions in limine are denied in part, granted in part, and continued under advisement in part.

The parties shall promptly meet with Magistrate Judge Pitman for settlement purposes and shall prepare for and appear at a final pre-trial conference in accordance with the Amended Pre-Trial Scheduling Order entered herewith.

SO ORDERED.

Dated: New York, New York
     May 31 , 2007

LAURA TAYLOR SWAIN
United States District Judge

Copies    5/31/07