UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROVIDENCIA V. and RICARDO V.,
individually and on behalf of their infant child,
K.V.,

                Plaintiffs,

-v-                                          No. 02 Civ. 9616 (LTS) (HBP)

LUCILLE SCHULTZE, individually and as caseworker;
FRANKIE CINTRON, individually and as supervisor;
BARBARA DITMAN, individually and as manager;
and CITY OF NEW YORK,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiffs Providencia V. and Ricardo V., individually and on behalf of their child, K.V. (collectively, "Plaintiffs"), brought this action against Defendants Lucille Schultze ("Schultze"), Frankie Cintron, Barbara Ditman ("Ditman") and the City of New York (collectively, "Defendants"),[1] pursuant to 42 U.S.C. § 1983 and state common law, alleging violations in connection with, inter alia, Defendants' removal of K.V. from Plaintiffs' custody without a court order around noon on August 30, 2001. Following a trial on the liability of Defendants and a jury verdict in Defendants' favor, Plaintiffs move the Court for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 with respect to their claims pertaining to the August 30 removal or, in the alternative, a new trial pursuant to Rule 59(a). Familiarity with the lengthy pre-trial proceedings and the trial record is presumed. The Court has considered thoroughly the parties' submissions. For the following reasons, Plaintiffs' motions

---

[1]     Claims against other Defendants named in this action have been voluntarily withdrawn.

are denied.

The standard for granting a Rule 50 motion is high. "Such a motion may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 133 (2d Cir. 2008) (internal citations and quotations omitted). The Court "must give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000) (internal quotations omitted). The non-moving party must be given "the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." Black v. Finantra Capital, Inc., 418 F.3d 203, 209 (2d Cir. 2005) (internal quotations omitted).

Although the standard for granting a Rule 59(a) motion for a new trial is less restrictive than the Rule 50 standard, it remains high. Nimely v. City of New York, 414 F.3d 381, 392 (2d Cir. 2005). "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98, 106 (2d Cir. 2002). "In determining whether the jury's verdict is so 'seriously erroneous' as to justify a new trial, the trial judge is free to weigh the evidence." Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002). However, if "resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." United States v. Landau, 155 F.3d 93, 105 (2d Cir.

1998).

The Court instructed the jury that, in considering whether a Defendant was liable under Plaintiffs' claims concerning the legality of the removal on August 30 without a court order, the jury

> must determine whether, based on the information the Defendant you are considering had at the time of the removal, an ACS official of reasonable caution would have believed that there were emergency circumstances involving an imminent threat of harm to the child, and that removal was necessary to protect the child from the harm.  Emergency circumstances are those in which the child is threatened with imminent harm, for example, where there is an immediate threat to the safety of the child, or where there is evidence of serious ongoing sexual or other abuse and the officials have reason to fear imminent recurrence.  The danger to the child must be so imminent that there is an insufficient amount of time to obtain a court order authorizing the child's removal.

(Tr. at 812:22-813:9.)  See Tenenbaum v. Williams, 193 F.3d 581, 594-95 (2d Cir. 1999); Hollenbeck v. Boivert, 330 F. Supp. 2d 324, 332 (S.D.N.Y. 2004).[2]

Plaintiffs' motions rely principally upon Schultze's testimony that she did not obtain a court order because of an ACS policy which dictated that case workers could only obtain a lawyer between the hours of 9 a.m. and 11 a.m. if a case worker wished to petition the Family Court for an order of removal that day.  (Tr. at 294:22-295:23; 303:8-304:16.)  No evidence was presented to cast doubt on the existence of such a policy at the time.  Therefore, Plaintiffs argue, no rational factfinder could have found that an ACS official of reasonable caution would have believed that there were "emergency" circumstances involving an imminent threat of harm to the child such that there was no time to obtain a court order, since it was ACS's own internal

---

[2] At trial, these claims were presented to the jury as Section 1983 claims alleging violations of the procedural due process aspect of the Fourteenth Amendment with respect to the parents, and violations of the Fourth Amendment with respect to K.V.  This standard also governed one of the elements of Plaintiffs' state law claim of false imprisonment.

bureaucracy, rather than any external exigencies, that created the "emergency" preventing Schultze from seeking recourse from Family Court that day.

Assuming *arguendo* that emergency circumstances cannot exist as a matter of law where the purported "emergency" is contingent solely on the existence of an ACS policy like the one described by Schultze, a rational jury could still have found that an ACS official of reasonable caution would have believed that there was still an imminent threat of sexual abuse-- that is, that a *true* emergency existed that prevented an ACS case worker from simply letting K.V. go home with his father while she went to Family Court, even if the case worker had immediate access to an ACS lawyer. It is undisputed that Rick sexually abused K.V. on August 26, and that ACS did not learn of the abuse until August 29. According to Schultze, when she visited Plaintiffs' home on August 29, Providencia V. told Schultze that she was taking Rick out of the house that night, and Schultze did not remove K.V. that night because she believed that Rick would actually be taken out of the house. (Tr. 227:1-14; 240:19-20; 243:12-16.) Ditman testified that Defendants learned on August 30 that Providencia V. had not, in fact, removed Rick from the home the previous night (*id.* at 681-683) and, according to ACS case notes, Ricardo V. indicated on August 30 that Rick's whereabouts were unknown. (Pls.' Ex. 12 at 50.) Providencia V. was at work on August 30 (*id.* at 144:7-10), and Ditman testified that Ricardo V. had indicated that he had difficulty controlling Rick and preventing him from harming Kirk. (See, e.g., *id.* at 682:23-25.) Construing the evidence of the circumstances known to Defendants at the relevant time in the light most favorable to Defendants, a rational jury could have found that an ACS official of reasonable caution would have believed that if she let K.V. return home from Bellevue that day while she sought recourse from Family Court, there would have been an *imminent* threat of

sexual abuse from his older brother Rick, whose whereabouts were unknown, whose mother was at work and whose father would have been unable to stop him, and that this threat was so imminent that it would not have been possible to protect him properly before obtaining a court order even if an ACS lawyer were available.  Accordingly, the existence of the 11 a.m. policy does not preclude a verdict in Defendants' favor on the August 30 removal claims, and Plaintiffs are not entitled to judgment as a matter of law on those claims.[3]

Nor are Plaintiffs entitled to a new trial under Rule 59(a).  Nearly all of the most pertinent evidence concerning the heavily disputed circumstances of August 29 and August 30, including precisely who was aware of what at what time, was presented or explained by witness testimony, and therefore resolution of the issues depended largely on sensitive assessments of the witnesses' credibility.  Accordingly, the Court cannot grant a new trial solely because it might have interpreted the various ambiguities and nuances of the witnesses' testimonies differently in terms of credibility.  The Court is not persuaded that the jury reached a "seriously" erroneous result, nor do Plaintiffs identify any errors in the course of trial that would have caused the verdict to be so egregious so as to be a miscarriage of justice.  Therefore, Plaintiffs' Rule 59(a) motion is denied.

---

[3] To the extent Plaintiffs suggest that Schultze's discussion of the ACS policy implies that she herself did not believe K.V. actually faced imminent harm that day, Schultze did explicitly testify that she believed K.V. faced imminent harm if he were to return home from Bellevue that day. (See Tr. 298:12-14 ("I truly believe [K.V.] would have been in imminent danger" if he were to have gone home from Bellevue on August 30.).)  A reasonable juror could have resolved the ambiguity in her testimony by choosing to credit the latter assertion.  In any case, Schultze's subjective motivations are not determinative of liability on the August 30 removal claims, which requires an objective examination of what an ACS official of reasonable caution would have believed, as the Court explains supra.

For the foregoing reasons, Plaintiffs' motions are denied. The Clerk of Court is respectfully requested to terminate Docket Entry No. 108. The jury having found in favor of Defendants on all claims, the Clerk of Court is also requested to enter judgment in favor of Defendants, and close this case.

SO ORDERED.

Dated:   New York, New York
         April 2, 2009

LAURA TAYLOR SWAIN
United States District Judge